**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

PHUONG NGO and COMMONWEALTH SECOND AMENDMENT, INC,

Plaintiffs,

v.

WILLIAM B. EVANS, in his Official Capacity as the Commissioner of the Boston Police Department

Defendant

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' APPLICATION FOR TEMPORARY RESTRAINING ORDER AND AFTER HEARING A PRELIMINARY INJUNCTION**

## INTRODUCTION

Plaintiffs Phuong Ngo and Commonwealth Second Amendment, Inc., seek a temporary restraining order and preliminary injunction enjoining the defendant from refusing to accept a United States Passport, issued by the United States Department of States, as conclusive proof of citizenship of applicants for a License to Carry Firearms.

The present policy of the Boston Police Department requires the applicant to present a Birth Certificate or Naturalization Documents to prove he is a United States Citizen. Phuong Ngo was a minor when his father naturalized, conferring citizenship on the plaintiff as a derivative of his father's citizenship. The only documents that prove the Citizenship of a derivative are a Certificate of Citizenship or a United States Passport, neither of which are acceptable under the Boston Police Department policy.

Defendant's conduct is unconstitutional. First, it violates the equal protection clause of the Fourteenth Amendment. Persons born in the United States can easily obtain a copy of their Birth Certificate at a municipal records office for a few dollars. Persons born outside the United States must pay hundreds of dollars to the Department of Homeland Security for citizenship documents that may or may not be acceptable. This policy clearly treats people differently based on their country of origin. Second, the policy is preempted by Federal Law. 22 U.S.C. § 2705 authorizes the use of a valid United States Passport as conclusive proof of Citizenship. Third, the policy violates the Second Amendment rights of foreign born citizens. Many foreign born United States Citizens, including Mr. Ngo, are unable to apply for a License to Carry Firearms, a prerequisite to the only lawful means in the Commonwealth of Massachusetts to own, purchase, and carry a handgun, and exercise their rights under the Second Amendment.

**STATEMENT OF FACTS**

The Plaintiff, Phuong Ngo is a U.S. citizen residing in Boston and holds a U.S. Passport. See Affidavit of Phuong Ngo, attached hereto as Exhibit "B", at ¶¶ 1-2. Mr. Ngo completed a License to Carry Firearms application provided by the Defendant's licensing representatives, Boston Police Department, for purposes to apply for a License to Carry. See a true and correct copy of Plaintiff's worksheet is attached hereto and made a part hereof as Exhibit "A".

Defendant refused to accept Mr. Ngo's valid U.S. Passport issued by the United States Federal Government as a valid form of proof of U.S. citizenship. See Exhibit "B", at ¶ 10. Defendant refused Mr. Ngo's application because of Plaintiff's absence of a United States Birth Certificate or a Certificate of Naturalization. See Complaint at ¶ 29. At one point, the Defendant inquired Mr. Ngo Green Card documentation. See Complaint at ¶ 15.

Mr. Ngo does not have any criminal record. See Cori Record, attached hereto as Exhibit "D". The Defendant has not made any specific allegation that Mr. Ngo was not a citizen or that Mr. Ngo's passport was otherwise invalid. The Defendant would not accept or even allow an appointment to process a License to Carry Firearms ("LTC") or Firearm Identification Card ("FID") unless the applicant provides a United States Birth Certificate or Naturalization Documents. See Exhibit "B", at ¶¶ 9 and 11.

Mr. Ngo derived his citizenship through the naturalization process with his father in 2006, for which Mr. Ngo's father qualified at the time. See Exhibit "B", at ¶ 3. Mr. Ngo did not acquire citizenship at birth and is therefore unable to provide a United States Birth Certificate requested by the Defendants. Mr. Ngo did not naturalize and is therefore unable to provide a Naturalization Document. See Exhibit "B", at ¶ 8. Mr. Ngo explained to the Defendant that he could not provide the requested documentation as he was neither born in the United States nor a naturalized citizen and that he is a United States citizen through his father. See Exhibit "B", at ¶ 13. According to the naturalization proceedings, the Mr. Ngo should not have a Naturalization Document due to becoming a citizen under the parent's naturalization process. See Complaint, at ¶ 27.

Even though, the Mr. Ngo offered his United States Passport as proof of his valid United States Citizenship, the Defendant repeatedly refused to accept plaintiff's United States Passport as evidence of his United States Citizenship. See Exhibit "B", at ¶¶ 13-18.

Mr. Ngo learned that he could apply for a Certificate of Citizenship from the United States State Department, and requested assurances from the Boston Police Department that this document would be accepted. The application via Unites States Citizenship and Immigration

Services ("USCIS") Form N-600 is required to obtain a Certificate of Citizenship with the fee in the amount of Six Hundred Dollars ($600). See Exhibit "B", at ¶¶ 19-20.

The Defendant refused to provide the assurances to the Mr. Ngo whether it would or would not accept a Certificate of Citizenship as proof of United States Citizenship. See Exhibit "B", at ¶ 21.

**ARGUMENT**

In order to prevail on a preliminary injunction motion, plaintiff must show (a) a substantial likelihood that it will ultimately prevail on the merits; (b) that plaintiff will suffer irreparable injury unless the injunction issues; (c) that the threatened injury to plaintiff outweighs whatever damage the proposed injunction may cause the defendants; and (d) that the injunction issued would not be adverse to the public interest. Planned Parenthood League v. Bellotti, 641 F.2d 1006, 1009 (1st Cir. 1981), cited in Camel Hair and Cashmere Institute of America v. Associated Dry Goods Corp., 799 F.2d 6, 12 (1st Cir. 1986).

The Defendant, in his licensing capacity to process LTC/FID applications, has utilized a limiting procedure during which he only accepts Birth Certificates and/or Naturalization Papers as a proof of citizenship. By refusing to accept a U.S. Passport as a conclusive proof of applicants' citizenships, the Defendant violated Mr. Ngo's constitutional rights: 1.) The Second Amendment to the United States Constitution, and 2.) The Equal Protection Clause of the Fourteenth Amendment of the United States Constitution.

A. Plaintiffs Established Likelihood of Success On Defendants Violating Plaintiff's Civil Rights.

A U.S. Passport, as a matter of law, see 22 U.S. Code § 2705(1), qualifies as a proof of citizenship for all purposes. Because the Defendant refused to accept Mr. Ngo's proof of citizenship, his rights under the Second Amendment to the Constitution of the United States, applied and incorporated to the States, were violated. Because the Defendant discriminated against Mr. Ngo based on his origin (outside the United States), his Equal Protection rights were equally violated. Because the Defendant refuses to accept a US passport as evidence of citizenship, in direct contravention of the Federal law establishing what constitutes a definitive proof of Citizenship, he also violates the Supremacy Clause in the Article VI of the United States Constitution.

On the basis of one or more of these three substantial violations of Plaintiffs' rights, Plaintiffs are likely to prevail on the merits of their claim. The Plaintiffs offer ample evidence that the Defendant violated Mr. Ngo's Constitutional rights under The Second Amendment of the United States Constitution, The Fourteenth Amendment of the United States Constitution and The Supremacy Clause, in Article VI of the United States Constitution. Because Plaintiffs have clearly met the requirements for an injunction, the Court should enjoin the defendants from refusing to accept U.S. Passports as proof of citizenship for LTC/FID application.

**A U.S. Passport As a Matter of Law Qualifies As a Proof Derivative Citizenship.**

A U.S. Passport, as a matter of law, qualifies as a proof of citizenship for the purposes of the LCT/FID. A passport, during its period of validity (if such period is the maximum period authorized by law), issued by the Secretary of State to a citizen of the United States shall have the same force and effect as proof of United States citizenship as certificates of naturalization or of citizenship issued by the Attorney General or by a court having naturalization jurisdiction.

Documentation of Citizenship, 22 U.S. Code § 2705(1). A child born outside of the United States automatically becomes a citizen of the United States when all of the following conditions have been fulfilled: (1) At least one parent of the child is a citizen of the United States, whether by birth or naturalization. (2) The child is under the age of eighteen years. (3) The child is residing in the United States in the legal and physical custody of the citizen parent pursuant to a lawful admission for permanent residence. 8 U.S.C. 1431. Passports "have the same force and effect as proof of United States citizenship as certificates of naturalization or of citizenship issued by the Attorney General or by a court having naturalization jurisdiction." Hizam v. U.S. 747 F.3d 102, 105 (2014).

Here, because Mr. Ngo's father became a naturalized U.S. Citizen in 2006, Mr. Ngo also became a U.S. Citizen as a derivative of his father's naturalization. Mr. Ngo fulfilled all of the conditions required and automatically became a United States citizen. Mr. Ngo holds a valid U.S. Passport. Therefore, Mr. Ngo's passport must be accepted as a definitive proof of citizenship as a matter of law.

**Background on Massachusetts Firearms law**

Possession of handguns, which under Massachusetts law are called firearms, see M.G.L. c.140, s.121, are generally prohibited by statute. See M.G.L. c.269, § 10. In order to gain exemption to this general prohibition, one must possess a license issued under M.G.L. ch. 140, § 131 in order to possess a firearm in the home or other location within the Commonwealth.

Although dicta in a number of recent cases say that a handgun may be possessed in one's own home on an FID card, (See eg. Commonwealth v Gouse, 461 Mass 787, 799-800, n. 14 (2012) or Chardin v Police Com. Of Boston, 465 Mass 314, 315 n.5 (2013)), this is clearly wrong when checked against the relevant statutes. The error appears caused by relying on cases

interpreting the pre-1998 statute (See Chapter 180, Acts of 1998) and/or briefs in turn relying on these pre-1998 cases. (eg, Hightower v City of Boston, 693 F3d 61, 1-62 (2012) cited "Commonwealth v. Ramirez, 555 N.E.2d 208, 211 (1990)" and "Commonwealth v. Seay, 383 N.E.2d 828, 831 (1978)." Both cases referred to a part of the law that was repealed in 1998 and is not currently in effect.) After 1998 any gun purchased on the permit to purchase, G.L. c.140, §131A, had to be kept at a licensed gun range, not in your home.

> "A firearms identification card shall not entitled a holder thereof to possess: (i) a large capacity firearm . . . except under a Class A license issued to a shooting club as provided under section 131 or under the direct supervision of a holder of a Class A license issued to an individual under section 131 at an incorporated shooting club or a licensed shooting range; or (ii) non-large capacity firearm or large capacity rifle or shotgun . . . except under a Class A license issued to a shooting club as provided under section 131 or under the direct supervision of a holder of a Class A license issued to an individual under section 131 . . . . " GL c.140, §129B,(6)(i)and (ii).

Under M.G.L. ch. 140, § 131(d), Massachusetts residents apply for LTCs from the police chief of the town or city where they reside or have a place of business. Mr. Ngo resides in the City of Boston (see Complaint ¶2). The licensing authority, in this case Boston Police Department, is responsible for taking the application, verifying the information and the applicants eligibility for the license under the statute, then if the licensing authority deems the applicant suitable, issuing the license within 40 days. M.G.L. ch. 140, § 131(e)

**Defendants Violated Mr. Ngo's rights under The Second Amendment of the United States Constitution.**

Because the Defendant refused to accept Mr. Ngo's citizenship proof for purposes of the LTC application, the plaintiff is unable to possess, *inter alia*, a handgun for the purpose of

defense of hearth and home, thereby violating plaintiff's Second Amendment of the United States Constitution. The Second Amendment provides that "A well regulated Militia, being necessary to the security of a free state, the right of the people to keep and bear Arms, shall not be infringed. U.S. Const. amend II." The Second Amendment "guarantee[s] the individual right to possess and carry weapons in case of confrontation." District of Columbia v. Heller, 554 U.S. 570, 592 (2008). While "The Constitution nowhere defines the meaning of these words, either by way of inclusion or of exclusion, except in so far as this is done by the affirmative declaration that 'all persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States.' Amend. Art. 14." Wong Kim Ark, 169 U.S. 649, 654 (Sup. Ct. 1898). Additionally, the Second Amendment "is fully applicable against the States." McDonald v. Chicago, 561 U.S. 742 (2010).

Under the Second Amendment of the United States Constitution, the Commonwealth of Massachusetts must to afford its citizens the right to bear arms and to protect themselves. Since the Defendant refused to accept Mr. Ngo's valid proof of citizenship, a U.S. Passport, the Defendant infringed upon the Mr. Ngo's right, as a U.S. citizen, the right to keep and bear arms under the Second Amendment of the U.S. Constitution.

**Equal Protection Clause of the Fourteenth Amendment**

Defendant's practice to deny Mr. Ngo application for the LTC/FID by refusing to accept Mr. Ngo's U.S. Passport as proof of a citizenship was based on Mr. Ngo's origin and naturalization. Because the Defendant discriminated against members of a protected class, such as Mr. Ngo, who weren't born in the United States, the Equal Protection Clause of the 14th Amendment under the Unites States Constitution applies. The Equal Protection Clause of the Fourteenth

Amendment provides that a State shall not "deny to any person within its jurisdiction the equal protection of the laws." Under the Equal Protection Clause, "classifications based on race or national origin and classifications affecting fundamental rights are given the most exacting scrutiny." Clark v. Jeter, 486 U.S. 465, 461 (1988).

**Plaintiff's Equal Protection of the United States Constitution Was Violated**

The Defendant, a Boston Police Department has the authority to process the LTC/FID application before submitting to the State of Commonwealth of Massachusetts and is considered to be a public administration. The Defendant processes and approves only qualified candidates to possess LTC/FID. The Boston Police Department Application Documentation Requirements provide that an applicant must provide to the Defendant a copy of either a Birth Certificate and/or Naturalization Papers to prove U.S. Citizenship. See, Exhibit "C", License to Carry Firearms/Fireamr Identification Card Document Check List. By requesting proof of citizenship or naturalization from LTC/FID applicants (one of the statutory requirements for a license granted under either M.G.L. c. 140 § 131 or M.G.L. c. 140 § 129B), the Boston Police Department's practice is fair on its face and impartial in appearance and the instant case does not raise a challenge to this requirement. This case challenges the method by which the applicant is required to prove Citizenship Due to Mr. Ngo's derivative naturalization process, Mr. Ngo is unable to provide a Birth Certificate or Naturalization Papers to prove his U.S. Citizenship. Moreover, Defendant refused to accept Mr. Ngo's U.S. Passport as proof of citizenship and gave no reason why U.S. Passport was insufficient. "Though the law itself be fair on its face and impartial in appearance, yet, if it is applied and administered by public authority with an evil eye and an unequal hand, so as practically to make unjust and illegal discriminations between

persons in similar circumstances, material to their rights, the denial of equal justice is still within the prohibition of the Constitution." Yick Wo v. Hopkins, 118 U.S. 356, 374 (1886). The Court also has repeatedly held that a prima facie Title VII violation may be established by policies or practices that are neutral on their face and in intent but that nonetheless discriminate in effect against a particular group. General Electric Co. v. Gilbert, 429 U.S, 125, 137 (1976). Here, although the policy appears to merely require proof of citizenship, the policy, by specifying which documents may and may not be used to prove citizenship, unequally places a burden on foreign born citizens, or excludes them entirely.

**Supremacy Clause**

The Supremacy Clause, in Article VI:

> "The Constitution, and the laws of the United States which shall be made in pursuance thereof; and all treaties made, or which shall be made, under the authority of the United States, shall be the supreme law of the land; and the judges in every state shall be bound thereby, anything in the constitution or laws of any state to the contrary notwithstanding."

The Supremacy Clause of the United States Constitution provides that the laws of the United States "shall be the supreme Law of the Land; * * * any Thing in the Constitution or Laws of any state to the Contrary notwithstanding." U.S. Const. art. VI, cl. 2. Since McCulloch v. Maryland, 17 U.S. (4 Wheat.) 316, 427 (1819), it has been settled that state law that conflicts with federal law is "without effect." Maryland v. Louisiana, 451 U.S. 725, 746 (1981). When determining if such a conflict exists, the "purpose of Congress" is the ultimate touchstone. Cipollone v. Liggett Group, Inc., 505 U.S. 504, 516 (1992). "It has long been held that the Congress has plenary power to make rules for the admission of aliens and to exclude those who possess those characteristics which Congress has forbidden." Boutilier v. INS, 387 US 118, 123 (S.C. 1967).

Hence, "No state can add to or take from the force and effect of such treaty or statute, for Article VI of the Constitution." Hines v. Davidowitz, 312 US 52, 62 (Sup. Ct. 1941).

Since through second section 2705, Congress has already authorized passport holders to use the passport as conclusive proof of citizenship and the statute plainly states that a passport has the same force and effect as a certificate of naturalization or citizenship issued by the Attorney General or by a naturalization court, the holders of these other documents can use them as conclusive evidence of citizenship. That the state has vital interests in ensuring compliance to statutory requirements is unpersuasive, as "even state regulation designed to protect vital state interests must give way to paramount federal legislation." De Canas v. Bica, 424 U.S. 351, 357(1976) Therefore, the Defendant's practice to refuse to accept a U.S. Passport must be without effect and invalid.

**Plaintiffs Will Suffer Irreparable Harm Unless Defendants Are Immediately Enjoined.**

In order to justify the award of a temporary restraining order, the moving party must first demonstrate that it is likely to suffer irreparable harm in the absence of the requested relief. Planned Parenthood League v. Bellotti, 641 F.2d 1006, 1009 (1st Cir. 1981). "When an alleged deprivation of a constitutional right is involved, most courts hold that no further showing of irreparable injury is necessary." 11A Charles A. Wright, Arthur R. Miller and Mary Kane, Federal Practice and Procedure, § 2948.1 at 161 (2d ed. 1995.) Here, the plaintiffs are alleging a violation of Second Amendment Rights. A violation of any protected right, regardless of the minimal amount of time, or the particular right being denied, still constitutes irreparable injury.

The Plaintiffs enjoy a fundamental right to keep and bear arms. McDonald v. City of Chicago, 130 S. Ct. 3020, 2010 U.S. Lexis 5523 at *64 (2010) (majority op.), at *113 (Thomas,

J.). "[T]he inherent right of self defense has been central to the Second Amendment right." District of Columbia v. Heller, 128 S. Ct. 2783, 2817 (2008).

The Second Amendment exists to secure the right of self-defense, and the inability to exercise this constitutionally-protected right causes a profound loss of a sense of one's security – to say nothing of the irreparable harm resulting from a successful criminal attack against an individual stripped of his right to defend himself. If passports are not accepted as proof of United States Citizenship for Firearms Licensing purposes, individuals including the plaintiffs will be completely barred from exercising these fundamental rights.

There are no legal remedies that would compensate the plaintiff.

B. The Threatened Injury To Plaintiff Outweighs Any Damage The Proposed Injunction Might Cause The Defendants.

Plaintiff's protections afforded by the Second Amendment of the U.S. Constitution outweighs any damage the proposed injunction might cause the Defendants. The Second Amendment "guarantee[s] the individual right to posses and carry weapons in case of confrontation." District of Columbia v. Heller, 554 U.S. 570, 592 (2008). Heller case "explicitly holds that the Second Amendment protects not a public good like self-governance, but the private right of self defense." Fletcher v. Haas, 851 F. Supp. 2d 287 - Dist. Court, D. Mass. 2012 Here, because the Defendants' refused to process Plaintiff's application for the LTC even though the Defendant is clearly a U.S. citizen, the Plaintiff was unable to use his private right of self-defense. Second Amendment of the U.S. Constitution is a right. In the absence of preliminary relief, the Plaintiff will continuously suffer from having a right to protect himself.

Granting the Temporary Restraining Order will cause no harm to the defendants.

The current practice of the police department is to visually inspect Birth Certificate and Naturalization Documents to ensure that the documents show that the person applying for a Firearms License is a United States Citizen.

Birth Certificates generally recorded and reproduced by the municipality in which the birth of the United States Citizen took place. Each municipality has its own standards, leading to the conclusion that there are thousands of different types of valid United States Birth Certificates.

Naturalization Certificates are issued at the time that the United States Citizen acquires Citizenship, or reproduced by the Department of Homeland Security. Older reproduced certificates were produced by the former Department of Justice. The certificates produced and reproduced vary over time, depending on the policy in place when the certificate was produced or reproduced.

A United States Passport is only valid for ten years. Only a few variations in design can occur within the lifetime of a passport. The training required for the Police to recognize a valid United States Passport would be much less than the training required to recognize one of the thousands of different designs of valid United States Birth Certificates, or one of the many Naturalization Documents produced over the years.

A visual inspection of a United States Passport to ensure that the document shows that the person applying for a Firearms License is a United States Citizen would involve inspecting one page, instead of trying to determine if a piece of paper purporting to be a Birth Certificate from some unknown town in a state a thousand miles away shows that the person applying for a Firearms License is a United States Citizen.

The harm to the plaintiff, if the Temporary Restraining Order is not granted, is irreparable. The plaintiff cannot obtain a United States Birth Certificate, as he was not born in the United States, and cannot obtain a Naturalization Document, as he obtained his citizenship as a derivative when his father naturalized. The only documents available to him to prove his United States Citizenship are his United States Passport, and a Certificate if Citizenship, neither of which are acceptable to the Boston Police Department under the current policy.

Under the current policy, the plaintiff is absolutely barred from exercising his Second Amendment Rights.

The plaintiff will be irreparably harmed if the Temporary Restraining Order is not granted, where the defendant will suffer absolutely no harm if the Temporary Restraining Order is granted.

The Proposed Injunction Would Not Harm Public Interest.

The proposed injunction would not harm public interest. In fact, a preliminary injunction will serve the public interest. Only qualified applicants will be able to obtain LTC/FID. It will further the strong statewide policies and clarify the paperwork necessary to apply for future LTC/FID within the State of Commonwealth without confusion among licensing authority and applicants as well as provide a speedy process.

22 U.S.C § 2705 Documentation of citizenship

The following documents shall have the same force and effect as proof of United States citizenship as certificates of naturalization or of citizenship issued by the Attorney General or by a court having naturalization jurisdiction:

(1) A passport, during its period of validity (if such period is the maximum period authorized by law), issued by the Secretary of State to a citizen of the United States.

(2) The report, designated as a "Report of Birth Abroad of a Citizen of the United States", issued by a consular officer to document a citizen born abroad. For purposes of this paragraph, the term "consular officer" includes any United States citizen employee of the Department of State who is designated by the Secretary of State to adjudicate nationality abroad pursuant to such regulations as the Secretary may prescribe.

The defendant can raise no reasonable argument that violating Federal Law by refusing to accept a valid United States Passport as proof of United States Citizenship is in the public interest, or that accepting a United States Passport would go against the public interest.

A policy that directly violates Federal Law cannot be argued to promote Public Interest.

CONCLUSION

For the foregoing reasons, all of the requirements for granting a temporary restraining order and a preliminary injunction have clearly been met. Wherefore, Plaintiff prays that this Court issue a temporary restraining order and preliminary injunction enjoining defendants from refusing to accept a U.S. Passport as a proof of the citizenship for the purposes of the LTC/FID application.

September 17, 2014

Respectfully submitted,

Phuong Ngo,
Commonwealth Second Amendment, Inc,

By their attorneys,

/s/ J. Steven Foley
J. Steven Foley
BBO # 685741
Law Office of J. Steven Foley
100 Pleasant Street #100
Worcester, MA 01609
Tel: 508-754-1041
Fax: 508-739-4051
JSteven@attorneyfoley.com

/s/ Margarita G. Smirnova

Margarita G. Smirnova
BBO 680429
Attorney at Law
40 Greenbrook Drive
Stoughton MA 02072
Tel: 617-875-8663
margarita.smirnova@gmail.com
Application for Admission *Pro Hac Vice* Pending