UNITED STATES DISTRICT COURT
FOR THE COMMONWEALTH OF MASSACHUSETTS

CIVIL ACTION NO. 1:14-CV-13670-RGS

_____
|
PHUONG NGO and |
COMMONWEALTH SECOND |
AMENDMENT, INC, |
|
                Plaintiffs, |
|
v. |
|
WILLIAM B. EVANS, in his Official |
Capacity as the Commissioner of the |
Boston Police Department, |
                 Defendant |
_____|

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSTITION TO
DEFENDANT'S MOTION TO DISMISS**

## SUMMARY

The defendant in the abovecaptioned matter has filed a motion to dismiss claiming (1) the case is moot because the Boston Police Department has changed its policy and now allows a US Passport to be used as evidence of U.S. Citizenship and (2) Commonwealth Second Amendment, Inc ("Comm2a") lacks standing.

The Plaintiffs argue (1) the reversal of the policy did not resolve the Civil Rights violation that Phuong Ngo suffered repeatedly and over time absent the instant action when he was unable to submit an application for a License to Carry and nominal damages apply, (2) the voluntary cessation of the unconstitutional policy is an exception to the mootness doctrine and the Boston Police Department can simply reverse its policy again, (3) the Defendant has not satisfied its burden to show mootness, (4) the injury is capable

of repetition as Mr. Ngo must renew his License to Carry every five years, (5) the requested relief is a declaratory judgment, not damages or injunctive relief, and (6) Comm2a's standing is based on actual damages incurred as a result of the Boston Police Department's policy.

**FACTS**

Plaintiff Ngo attempted to submit a License to carry Firearms with the Boston Police department, but was refused due to a lack of acceptable evidence of citizenship. His appointment to submit his application was originally scheduled for August 21, 2014. Immediately after this suit was filed, the Boston Police Department changed its policy and now accepts a United States Passport as proof of Citizenship. The Boston Police Department allowed Mr. Ngo to submit his application on October 7, 2014. Forty Seven days elapsed between August 21, 2014, the date Mr. Ngo was originally scheduled to submit his application for a License to Carry ("LTC"), and October 7, 2014, the date Mr. Ngo was actually permitted to submit his application.

**ARGUMENT**

Although the Defendant did not deny Ngo the actual appointment, it was clear that the Defendant did not expect Ngo to produce either Birth Certificate or Naturalization papers knowing full well that if he doesn't have the paperwork, the application would not be complete. Moreover, making an appointment for Ngo to appear knowing that Ngo cannot produce paperwork while not planning to process his application is antagonistic at its best.

According to the Defendant's non-notarized affidavit, Detective McDonough has been working in the Department since 1983. He should have been aware of what is occurring within the Department. The Licensing Unit consists of three patrol officers and two non police employees. Abnormalities in processing should have put Detective McDonough on notice that an otherwise eligible candidate for LTC/FID was unable to even make an appointment to apply. See Plaintiff's Exhibit A at ¶¶ 11.

However, the Lieutenant Detective John McDonough stated that he has no recollection of speaking with Phuong Ngo even though the Licensing Unit consists of five (5) people. See Defendant's Exhibit 1 at ¶¶ 6 and the fact that a Sergeant instructed "Ngo to contact USCIS to inquire about his situation." See Defendant Motion to Dismiss, page 1. Moreover, Ngo was told that someone would call him. Nobody returned the call for his inquiry. See Plaintiff's Affidavit B at ¶¶ 24,25. It is clear Ngo took all steps to apply for his LTC/FID in a prompt, diligent, and timely manner but was unable to be able to submit his application; let alone obtain his LTC.

**Civil Rights Violation**

Section 1983 provides a remedy for the deprivation of "rights, privileges, or immunities" guaranteed by the constitution or laws of the United States. Parratt v. Taylor, 451 U.S. 527 (1981), overruled in part on other grounds by Daniels v. Williams, 474 U.S. 327 (1986); Mitchum v. Foster, 407 U.S. 225 (1972). No specific intent to deprive a person of a civil right is required to state a cause of action under Section 1983. Monroe v. Pape, 365 U.S. 167 (1961), overruled on other grounds by Monell v. Soc. Servs. of N.Y., 436 U.S. 658 (1978). However, the plaintiff does have to establish the intent required to prove that a particular constitutional right has been violated. For

example, violation of the Fourth Amendment by excessive force in an arrest requires only unreasonable force, while violation of the Eighth Amendment in use of force on a prisoner requires malice. Graham v. Conner, 490 U.S. 386 (1989); Whitley v. Albers, 475 U.S. 312 (1986).

The Second Amendment "codifies a 'right of the people'" as individuals "to possess and carry weapons in case of confrontation" in the defense of "hearth and home." District of Columbia v. Heller, 554 U.S. 570, 579, 592, 599 (2008) (overturning a local ban on possession of an operable firearm in one's own home for purposes of self defense). The view taken by most federal courts post-Heller, that "[i]t is settled law . . . that the Second Amendment applies only to limitations the federal government seeks to impose on [the right to bear arms]," Maloney v. Cuomo, 554 F.3d 56, 58 (2d Cir. 2009) (per curiam), was repudiated by the Supreme Court in McDonald v. City of Chicago, 130 S.Ct. 3020 (2010). McDonald struck down a Chicago ordinance that effectively banned the possession of handguns by City residents. While rejecting the petitioners' principal argument that the right to bear arms is guaranteed by the Fourteenth Amendment's Privileges or Immunities Clause, the Court in an opinion by Justice Alito held that the Due Process Clause of the Fourteenth Amendment, by incorporation, makes the Second Amendment right binding on the States. In deciding that the right to bear arms is "'fundamental' to the scheme of ordered liberty" and is "deeply rooted in this Nation's history and tradition," Justice Alito found this to be especially true of handguns "because they are the 'the most preferred firearm in the nation . . . for protection of one's home and family.'" Id. at 3036 (internal citations omitted).

A plaintiff is entitled to at least a nominal damages award for establishing that his or her rights were violated under 42 U.S.C. § 1983. Perez v. Univ. of P.R., 600 F.2d 1 (1st Cir. 1979). Mr. Ngo was denied the opportunity to submit an application for a License to Carry Firearms for forty seven days.

Under the Mass. Gen. Laws Ch. 140 Sec. 131, "The licensing authority shall, within 40 days from the date of application, either approve the application and issue the license or deny." Ngo began his application for LTC/FID on July 11, 2014. See Plaintiff's Affidavit Exhibit A at ¶ ¶ 2. The Boston Police Department refused to accept an application from the Plaintiff based on lack of proof of Plaintiff's citizenship. Ngo had an appointment on August 21, 2014 to file his application. See Plaintiff's Affidavit Exhibit A at ¶ ¶ 11. Had the police department accepted Mr. Ngo's application on August 21, and processed the application according the law, Mr. Ngo would have received his LTC within forty days after submitting his application, or seven days BEFORE he was actually permitted to submit the application. To this day, Ngo still doesn't have his LTC and cannot exercise his Constitutional rights. Mr. Ngo was denied his rights under the Second Amendment and under the Fourteenth Amendment for at least forty seven days.

The Second Amendment "guarantee[s] the individual right to possess and carry weapons in case of confrontation."District of Columbia v. Heller, 554 U.S. 570, 592 (2008). A delay in the filing of an application will have a likely result is a delay of similar duration in the issuance of the License to Carry. Because the Defendant refused to accept Mr. Ngo's citizenship proof for purposes of the LTC application, the plaintiff was unable to possess, inter alia, a handgun for the purpose of defense of hearth and

home, thereby violating plaintiff's Second Amendment of the United States Constitution. Because a License to Carry Firearms is required to exercise Second Amendment Rights in Massachusetts, the refusal to accept an application for a license to carry violated the Plaintiff's rights under the Second Amendment and Mr. Ngo was unable to exercise those rights.

If the plaintiff proves violation of rights but does not prove that any injury flowed from that violation, only nominal damages may be awarded. In this case, both parties agree that the Plaintiff's Civil Rights were violated. The Defendant refused to accept a U.S. Passport as a conclusive proof of applicants' citizenship. By refusing to accept Plaintiff's U.S. Passport, the Defendant violated Mr. Ngo's constitutional rights under The Second Amendment to the United States Constitution, and The Equal Protection Clause of the Fourteenth Amendment of the United States Constitution. Therefore, nominal damages should be awarded to the Plaintiff.

42 U.S.C. § 1988(b) separately provides that in federal civil rights actions, including those brought under 42 U.S.C. § 1983, "the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs.' Section 1988 requires a two-part inquiry: (1) whether the plaintiff is a prevailing party, and (2) if the plaintiff is a prevailing party, what constitutes a reasonable fee award." See, Boston's Children First v. City of Boston, 395 F.3d 10, 14-18 (1st Cir.2005).

Because the Defendant discriminated against Mr. Ngo based on his origin (born outside the United States), the Plaintiff's Equal Protection rights were also violated. The Equal Protection Clause of the Fourteenth Amendment provides that a State shall not "deny to any person within its jurisdiction the equal protection of the laws." Under the

Equal Protection Clause, "Classifications based on race or national origin and classifications affecting fundamental rights are given the most exacting scrutiny." Clark v. Jeter, 486 U.S. 456, 461 (1988) internal citations omitted.

The defendant claims that the reversal of its policy, and the acceptance of Mr. Ngo's application fully resolve the controversy. This resolution fails to address the violation of Mr. Ngo's rights that occurred before the policy was changed.

**The Defendant has not satisfied its burden to show mootness.**

Defendants' motion to dismiss is a futile attempt to prevent judicial review of Boston Police Department's unlawful practice of not allowing individuals with valid U.S. Passports to apply for the LTC/FID when they should. Defendant alleges that the case is moot simply because the Lieutenant Detective McDonough, who is responsible for overseeing the Licensing Unit, submitted in his Affidavit that the policy had been changed within days of notification, in lieu of the litigation. See the Defendant's Exhibit 1. The Defendant had to show that it was "absolutely clear" they would not resume that conduct. See ACLUM v. United States Conference of Catholic Bishops, 705 F. 3d 44, 51 (2013). The Defendant did not satisfy this "absolutely clear" standard. Moreover, the Defendant did not mention anything at all. Something they could not do because while the statute requires applicants and holders of LTCs in MA to be citizens, among other classes of lawfully admitted persons, the statute is silent on how to determine this. Therefore, it is discretionary on the part of the Licensing Authority on how to fulfill this requirement, as Defendants response changing the policy within days shows.

"It is a basic principle of due process that an enactment is void for vagueness if its prohibitions are not clearly defined." Grayned v. City of Rockford, 408 U. S. 104, 108 (1972). Otherwise, "[t]he defendant is free to return to his old ways," *id.,* at 632, and this fact would be enough to prevent mootness because of the "public interest in having the legality of the practices settled." DeFunis v. Odegaard, 416 US 312, 328 (1974).

Defendant does not seriously contend that Ngo lacked standing to assert his claim at the outset of this case. Instead, Defendant argues only that Ngo lacks standing today because Boston Police Department changed his policy, after being served by the complaint, by allowing a U.S. Passport be admitted as proof of citizenship. However, "A voluntary cessation of the" unconstitutional "practices complained of could make this case moot only if it could be said with assurance "that `there is no reasonable expectation that the wrong will be repeated.' "United States v. W.T. Grant Co., 345 U.S. 629, 633 (1953).

There is a heavy burden of proof to demonstrate mootness." See W.T. Grant, 345 U.S. at 633. What Defendant should have done is to show that a case may become moot if "(1) it can be said with assurance that 'there is no reasonable expectation ...' that the alleged violation will recur, and (2) interim relief or events have completely and irrevocably eradicated the effects of the alleged violation." United States v. W.T. Grant, 345 U.S. 629 at 633 (1953). Since the Defendant had a burden of proof to demonstrate mootness, yet did not attempt to assure with any reasonable certainty that they do not expect to reverse the policy of accepting the U.S. Passport as proof of U.S. Citizenship, the Defendant failed to show the case is moot and the alleged burden to disprove the mootness did not pass to the Plaintiff. Defendant's cited case S. Pac. Terminal Co. v.

ICC, 219 U.S. 498, 511 (1911) in which "the order of the Commission has expired and that the case having thereby become moot", doesn't apply to this case. The Lieutenant Detective John McDonough merely changed the policy and the Department is free to reinstate old policy at a later date.

An actual controversy exists because reapplication within 5 years is a significant fact in the litigation. Even if assuming the burden to disprove mootness is on Plaintiff and if the court agrees with the Defendant, the Defendant alleged that mootness's scope of exception applies where "(1) the challenged action is in its duration too short to be fully litigated prior to cessation or expiration; and (2) there is a reasonable expectation that the same complaining party will be subject to the same action again." FEC v. Wis. Right To Life, Inc., 551 U.S. 449, 462 (2007). With respect to the second prong of this analysis, a party arguing against mootness must show either "a `reasonable expectation' or a `demonstrated probability' that `the same controversy will recur involving the same complaining party.'" Id. at 463. The second prong usually demands that it be the same party who is likely to face a similar conflict in the future and "the case law admits of some imprecision on this point." See, Barr v. Galvin 626 F.3d 99, 105 (2010).

Even if the Defendant argument relies on the Barr case, the Plaintiff can easily surpass the mootness requirement. Barr involved ballot access and found the access to be time-sensitive. Barr set precedent for issues involving elections which have tendency to recur every few years and are of continuous nature, hence, they avoid mootness. Under the Barr, the Plaintiff must show either "a `reasonable expectation' or a `demonstrated probability' that `the same controversy will recur involving the same complaining party." See Barr v. Galvin 626 F.3d 99, 105 (2010).

Ngo satisfies the first Barr requirement because this action is in its duration too short to be fully litigated prior to cessation or expiration. Under the Massachusetts law, LTC/FID application period Mass. Gen. Laws Ch. 140, Sec. 131, the licensing authority shall, within 40 days from the date of application; either approve the application and issue the license or deny the application and notify the applicant of the reason for such denial in writing. Considering the short period of application process, this challenged action is not only in its duration too short to be fully litigated prior to cessation or expiration, but also impossible.

Ngo satisfies the second Barr requirement because there is a reasonable expectation that he will be same complaining party that will be subject to this very same action again. The second prong usually demands that it be the same party who is likely to face a similar conflict in the future and "the case law admits of some imprecision on this point." See, Barr v. Galvin 626 F.3d 99, 105 (2010). Ngo will again be required to apply for LTC/FID to renew within 5 year; therefore, there is certainty of a "capable of repetition" so far as he is concerned. Given the fact that the Defendant easily can change its policy on their whim, the simple acceptance of the application for the LTC/FID is insufficient because Ngo is required to reapply to renew the LTC/FID within 5 years.

Defendant ignores that in order to renew his license, Ngo is required by law to re-apply for his LTC/LTC within five (5) years. In five years, Ngo will have to produce proof of his U.S. Citizenship all over again. Hence, the Plaintiff will remain the same. Ngo's U.S. Citizenship status is not going to change. Ngo will still have a derivative U.S. Citizenship and will not obtain a U.S. Birth Certificate or Naturalized Papers. Generally, "a case should not be considered moot if the defendant voluntarily ceases the

allegedly improper behavior in response to a suit, but is free to return to it at any time. Only if there is no reasonable expectation that the illegal action will recur is such a case deemed moot. United States v. W.T. Grant Co., 345 U.S. 629, 632-33, (1953). In its Defendant's Memorandum of Law in Support of its Motion to Dismiss Plaintiff's Complaint, Defendant erroneously speculates that updating Department's policy by allowing U.S. Passport as a definitive proof of citizenship would deem the case moot. However, such policies apply only to statutory changes. "If a challenged law is repealed or expires, the case becomes moot. See Burke v. Barnes,479 U.S. 361, 363, (1987).

In this case, Plaintiffs were under no obligation to notify and provide opportunity before filing a complaint in order to shelter Defendants from future action. If Congress wanted to require such, they know how to do so. In some fee shifting statutes, Congress has required notice to be made in order to provide a period of time for a potential defendant to remedy a harm alleged by potential plaintiffs in civil litigation. See 33 USCS § 1365(b)(1)(A). "The purpose of notice to the alleged violator is to give it an opportunity to bring itself into complete compliance with the Act and thus . . . render unnecessary a citizen suit." Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Foundation, Inc., 484 U.S. 49, 60, 98 L. Ed. 2d 306, 108 S. Ct. 376 (1987) as quoted by Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.,528 U.S. 167, 174-175(U.S.2000) Congress has provided no such requirement on those alleging civil rights violations. On the contrary, the civil rights statutes provide for fee shifting for the very reason that Ngo claims today, that for those aggrieved by civil rights violations should not suffer the harms brought about by costs associated with the litigation to right such wrongs. Additionally, the very notion of declaratory judgment is to ensure that those who come

after are on notice that future violations come with it risks of further damages. Mr. Ngo has, as a matter of law (see 28 USCS §2201), an entitlement to declaratory judgment not only for recovery of his costs on the current matter, but to ensure notice to future violators.

**Mootness Doctrine and Voluntary Cessation**

The court will "not consider a case moot "if the defendant voluntarily ceases the allegedly improper behavior in response to a suit, but is free to return to it at any time." Native Village of Noatak v. Blatchford, 38 F.3d 1505, 1510 (9th Cir.1994). Here, there is a reasonable expectation that the Defendant can easily change his policy in the future. "It is well settled that a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice. Such abandonment is an important factor bearing on the question whether a court should exercise its power to enjoin the defendant from renewing the practice, but that is a matter relating to the exercise rather than the existence of judicial power." City of Mesquite v. Aladdin's Castle, Inc., 455 US 283, 289 (1982). In this case, Boston Police Department's change "of the objectionable language would not preclude it from reenacting precisely the same provision if the District Court's judgment were vacated". See City of Mesquite v. Aladdin's Castle, Inc., 455 US 283, 289 (1982). Moreover, "a defendant cannot simply assume that its legal position is sound and have the case dismissed because it has tendered everything it *admits* is due. Mootness occurs when no more relief is possible." Since, "that point has not been reached," this case is not moot. See Gates v. Towery, 430 F.3d 429, 432 (2005).

A defendant may not moot a claim for injunctive relief simply by ceasing the unlawful conduct. A contrary rule would encourage the resumption of unlawful conduct following the dismissal of litigation. <u>United States v. W.T. Grant Company</u>, 345 U.S. 629, 633 (1953); see also <u>Friends of the Earth v. Laidlaw Environmental Services, Incorporated</u>, 528 U.S. 167, 189, 193 (2000) (quoting and citing United States v. Concentrate Phosphate Export Association, 393 U.S. 199, 203 (1968)) ("A case might become moot if subsequent events made it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur."); <u>Adarand Constructors v. Slater</u>, 528 U.S. 216, 222 (2000) (burden of showing non-recurrence lies with party asserting mootness). In the <u>United States v. W.T. Grant Company</u>, the Supreme Court held that the voluntary cessation of illegal conduct would moot a case only if the defendant established that "there is no reasonable expectation that the wrong will be repeated."

Unless the defendant meets that "heavy" burden, the court has the power to hear the case and the discretion to grant relief. A "voluntary cessation of allegedly illegal conduct does not deprive the tribunal of power to hear and determine the case, *i. e.,* does not make the case moot." <u>United States v. W.T. Grant Co</u>., 345 U.S. 629, 632 (1953). Decades later, courts reiterated that the voluntary cessation exception does not save the Defendant's challenge.

The court will also "not consider a case moot "if the defendant voluntarily ceases the allegedly improper behavior in response to a suit, but is free to return to it at any time." <u>Native Village of Noatak v. Blatchford</u>, 38 F.3d 1505, 1510 (9th Cir.1994). Here, there is a reasonable expectation that the Defendant can easily change his policy in the future. "It is well settled that a defendant's voluntary cessation of a challenged practice does not

deprive a federal court of its power to determine the legality of the practice. Such abandonment is an important factor bearing on the question whether a court should exercise its power to enjoin the defendant from renewing the practice, but that is a matter relating to the exercise rather than the existence of judicial power." City of Mesquite v. Aladdin's Castle, Inc., 455 US 283, 289 (1982). Boston Police Department's change "of the objectionable language would not preclude it from reenacting precisely the same provision if the District Court's judgment were vacated". See City of Mesquite v. Aladdin's Castle, Inc., 455 US 283, 289 (1982). Moreover, "a defendant cannot simply assume that its legal position is sound and have the case dismissed because it has tendered everything it *admits* is due. Mootness occurs when no more relief is possible." Since, "that point has not been reached," this case is not moot. See Gates v. Towery, 430 F.3d 429, 432 (2005).

Though Mr. Ngo successfully submitted his application, a License to Carry Firearms in Massachusetts expires in five years. At that time, Mr. Ngo must file another application to renew his license. Here, the defendant's unlawful policy was reversed immediately upon notification of the filing of this suit. The defendant has failed to even make any assertions that there is no reasonable expectation that the wrong will be repeated. On the contrary, the ease with which the policy was changed demonstrates the ease with which the policy can be changed again. It is the duty of the courts to beware of efforts to defeat relief by protestations of repentance and reform, especially when abandonment seems timed to anticipate suit, and there is probability of resumption.' United States v. Oregon State Medical Society, 1952, 343 U.S. 326, 333 (1952). Citing United States v. United States Steel Corp., 251 U.S. 417, 445 (1920). "Even if a

defendant has ceased an allegedly illegal practice, we [the court] may review the practice if it constitutes "a wrong 'capable of repetition yet evading review,' or where the defendant voluntarily ceases an allegedly illegal practice but is free to resume it at any time." Native Village of Noatak v. Blatchford, 38 F.3d 1505, 1509 (9th Cir.1994). "The case is not moot, since the moratorium by its terms is not permanent." Los Angeles v. Lyons, 461 US 95, (Sup. Ct. 1983)  While there is time restriction on Defendant's changed policy, there is nothing stopping McDonough to reinstate the old policy.

To dismiss this case as moot would permit the Defendant to compound its error at Ngo's expense. "It is well settled that a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice." Therefore, "Repeal of city ordinance did not render challenge to ordinance moot where city was likely to reenact statute after completion of litigation" See, City of Mesquite v. Aladdin's Castle, Inc. 455 U.S. 283, 289 (1982).

**Comm2a Standing**

The defendant claims that Comm2a lacks standing as it does not have a "personal stake" in the controversy. In order to establish the "personal stake" requirement, the plaintiff bears the burden of demonstrating that (i) he has suffered an actual or threatened injury in fact, which is (ii) fairly traceable to the statute, and (iii) can be redressed by a favorable decision. Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-561 (1992). Here, Comm2a suffered actual injury by expending significant resources assisting people, including but not limited to Plaintiff Ngo, who are unable to submit an application for a License to Carry Firearms or a Firearms Identification Card, including specifically people

denied processing of Firearms Applications due to the refusal of police departments to accept a United States Passport as proof of United States Citizenship. The defendant believes Phuong Ngo was the only person affected by the policy in question. In fact, ALL United States Citizens holding US Passports were affected by this policy. The fact that other police departments adhere to the same policy and Comm2a expended resources assisting those applicants from other cities and towns does not eliminate the expenditure of resources for the United States Citizens who were prohibited from using their United States Passport as proof of citizenship. Though the policy has a disparate impact on derivative citizens, it infringes on the rights of ALL Citizens.

WHEREFORE, The Plaintiffs respectfully request this Honorable Court DENY the Defendant William Evan's motion to dismiss.

October 28, 2014

    Respectfully submitted,
    Phuong Ngo,
    Commonwealth Second
    Amendment, Inc,

    By their attorneys,


    /s/ J. Steven Foley
    J. Steven Foley
    BBO # 685741
    Law Office of J. Steven Foley
    100 Pleasant Street #100
    Worcester, MA 01609
    Tel: 508-754-1041
    Fax: 508-739-4051
    JSteven@attorneyfoley.com

    /s/ Margarita G. Smirnova
    Margarita G. Smirnova

BBO 680429
Attorney at Law
40 Greenbrook Drive
Stoughton MA 02072
Tel: 617-875-8663
margarita.smirnova@gmail.com

## CERTIFICATE OF SERVICE

I hereby certify that on October 28, 2014, this document filed through the CM/ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and paper copies will be sent to those indicated as non-registered participants.

/s/ J. Steven Foley
J. Steven Foley

## 7.1 Certification

Undersigned counsel certifies that on September 26, 2014, pursuant to LR, D. Mass 7.1(a)(2), undersigned counsel for the Plaintiffs Phuong Ngo and Commonwealth Second Amendment, Inc. spoke with counsel for the Defendant, Nicole Taub, regarding the issues brought by the instant motion. The parties continued to communicate via e-mail and have been unable to resolve or narrow the issues brought by the instant motion.

Date: October 28, 2014
/s/ J. Steven Foley
J. Steven Foley